**KLEIN LAW GROUP, LLLC**
Robert G. Klein #1192-0
Kurt W. Klein #10357-0
David A. Robyak #10321-0
James M. Yuda #10328-0
Jason W. Jutz #10659-0
1001 Bishop Street, Suite 2788
Honolulu, HI 96813
Telephone: 808.591.8822
Facsimile: 808.427.9761
rgk@kleinlg.com, kwk@kleinlg.com,
dar@kleinlg.com, jmy@kleinlg.com,
jwj@kleinlg.com

*Attorneys for Kalshi Inc.,*
*KalshiEX LLC, Kalshi Klear Inc.,*
*Kalshi Klear LLC, and Kalshi Trading LLC*

Additional counsel identified on signature page

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF HAWAI‘I**

| | |
|---|---|
| BRANDON FARIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KALSHI INC.; KALSHIEX LLC; KALSHI KLEAR INC.; KALSHI KLEAR LLC; KALSHI TRADING LLC; and DOES 1–50,<br><br>Defendants. | CASE NO.:<br><br>**DEFENDANTS’ NOTICE OF REMOVAL; EXHIBITS 1–18; CERTIFICATE OF SERVICE**<br><br>[Removal from Circuit Court of the First Circuit, State of Hawai‘i]<br><br>Action Filed: October 1, 2026 |

## NOTICE OF REMOVAL

Defendants Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC (together, "Kalshi") hereby remove this action from the Circuit Court of the First Circuit, State of Hawai'i, to the United States District Court for the District of Hawai'i.[1] This Court has original jurisdiction over this matter under 28 U.S.C. §§ 1332(d) and 1453 because minimal diversity exists and the amount in controversy exceeds $5 million, exclusive of interest and costs. Diversity jurisdiction also exists under 28 U.S.C. § 1332(a) because complete diversity exists and the amount in controversy exceeds $75,000. The Court also has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1441.

This Notice of Removal is not intended to constitute and should not be construed as constituting the general appearance or appearance on the merits of Kalshi in this matter. By filing this Notice of Removal, Kalshi does not waive any defenses it has to this action whether in state or federal court, including, but not limited to, improper service of process, lack of personal or subject matter

---

[1] Plaintiff also names "Does 1–50" as defendants in this action. Ex. 1 (Compl.) ¶ 18. Because fictitiously named defendants have not been "properly joined and served," they need not be joined in removal. 28 U.S.C. § 1446(b)(2)(A); *see Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) (unanimity requirement does not extend to "unknown" parties); *see also Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984) ("Our circuit rule is that a party not served need not be joined[.]").

jurisdiction, and Kalshi's right to compel this action to arbitration or to move to transfer this action to another district.

In support of removal, Kalshi respectfully states as follows:

# I. BACKGROUND

## A. Defendants

1. KalshiEX LLC ("KalshiEX") is a financial services company that operates a federally regulated derivatives exchange and prediction market on which users can buy and sell financial products known as "event contracts." Event contracts allow users to take "yes" or "no" positions on the outcome of specified events, such as which candidate will win an election or whether the seasonally adjusted unemployment rate reported by the Bureau of Labor Statistics will exceed a certain percentage. KalshiEX also offers event contracts based on sporting and other events.

2. Event contracts are a type of "swap" within the meaning of the Commodity Exchange Act of 1936, 7 U.S.C. § 1 *et seq.* ("CEA"). *See* 7 U.S.C. § 1a(47)(A)(ii) (defining "swap" to include "any agreement, contract, or transaction . . . that provides for any . . . payment[ ] or delivery . . . that is dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence"); *KalshiEX, LLC v. Flaherty*, 172 F.4th 220, 226 (3d Cir. 2026)

("'swap' includes event contracts"); *Coinbase Fin. Mkts., Inc. v. Raoul*, No. 1:25-cv-15406, 2026 WL 2969682, at *18 (N.D. Ill. Oct. 2, 2026) (describing "Kalshi's sports-related swap contracts"). KalshiEX's exchange is a designated contract market ("DCM"), and under the CEA, regulation of DCMs is committed to the exclusive jurisdiction of the Commodity Futures Trading Commission ("CFTC"). *See* 7 U.S.C. § 2(a)(1)(A); *see also Flaherty*, 172 F.4th at 226 ("The [CEA] preempts state laws that directly interfere with swaps traded on DCMs. Kalshi's . . . event contracts are swaps traded on a CFTC-licensed DCM, so the CFTC has exclusive jurisdiction."); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 386 (1982) ("the [CFTC] was given exclusive jurisdiction over commodity futures trading" pursuant to the CEA).

3. Kalshi Klear LLC ("Kalshi Klear") provides clearing services for event contracts traded on KalshiEX's DCM platform. Kalshi Klear offers clearing and settlement services to market participants for pre-funded and fully collateralized trades. Kalshi Klear is registered with and federally regulated by the CFTC as a derivatives clearing organization ("DCO") pursuant to the CEA.

4. Kalshi Trading LLC ("Kalshi Trading") participates on and provides liquidity for the contracts traded on the KalshiEX DCM platform. Like other market participants, Kalshi Trading is a member of KalshiEX's exchange and subject to KalshiEX's rules, and it receives no trading advantages relative to other unaffiliated

market participants. Kalshi Trading is operationally distinct from Kalshi Inc. and its other affiliates: it does not share office space with any other affiliate, and strict information barriers prevent any coordination or conflict of interest with the exchange.[2] Kalshi Trading accounts for only a small share of activity on the exchange: less than three percent of exchange volume on KalshiEX year to date, and even less of sports event contract volume.

5. Kalshi Inc. is the parent holding company of Kalshi Klear Inc., KalshiEX, and Kalshi Trading.

6. Kalshi Klear Inc. is a wholly owned subsidiary of Kalshi Inc. and the sole member of Kalshi Klear.

7. Plaintiff also names "Does 1–50" as defendants in this action, Ex. 1 ¶ 18, but the Complaint contains no allegations related to these unnamed defendants.

**B. The Case**

8. Plaintiff Brandon Farias filed this action in the Circuit Court of the First Circuit, State of Hawaiʻi, on October 1, 2026. Ex. 1.

9. Plaintiff purports to bring claims under §§ 480-2, 480-12, and 480-13 of the Hawaiʻi Unfair or Deceptive Acts or Trade Practices Act, Haw. Rev. Stat. § 480-1 *et seq.*, on behalf of "[a]ll persons residing in Hawaiʻi who purchased sports

---

[2] *See* KalshiEX LLC, *Rulebook* Rule 2.12 (v1.31) (Nov. 4, 2026), *available at* https://perma.cc/A5PL-6BQ5.

event contracts through Kalshi and suffered a net monetary loss from those transactions during the applicable class period." Ex. 1 ¶¶ 38, 49–58.

10. Haw. Rev. Stat. § 480-2(a) declares "unfair or deceptive acts or practices in the conduct of any trade or commerce" to be unlawful. Section 480-12, in turn, declares void any agreement made in violation of Chapter 480. Section 480-13(b) allows a consumer injured by a violation of § 480-2 to sue for damages and injunctive relief, and provides for statutory multiplication where authorized.

11. Plaintiff alleges that Kalshi "engaged in unfair or deceptive acts or practices by representing, directly or by implication, that sports betting through Kalshi was 'legal in all 50 states,' including Hawai'i." Ex. 1 ¶ 52. Plaintiff alleges that such representations were misleading because Kalshi's event contracts "constitute gambling under HRS § 712-1220" and are not "authorized commercial sports wagering under Hawai'i law." *Id.*

12. Haw. Rev. Stat. § 712-1220 defines gambling as "stak[ing] or risk[ing] something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." It provides that "[g]ambling does not include bona fide business transactions valid under the law of contracts, including but not limited to contracts for the purchase or sale at a future date of securities or commodities." *Id.*

13. Plaintiff purports to sue Kalshi under Hawaiʻi law for hosting federally regulated and lawful sports event contracts. *See, e.g.*, Ex. 1 ¶¶ 1, 8. As noted, the event contracts at issue were traded on an exchange market that is federally regulated as a DCM by the CFTC.

14. Plaintiff also purports to bring a claim for unjust enrichment on the basis that "[i]t would be unjust for [Kalshi] to retain benefits obtained through transactions induced by unfair or deceptive representations concerning legality and through agreements that Plaintiff alleges are void under [Haw. Rev. Stat.] § 480-12." Ex. 1 ¶ 63.

## II. THE COURT HAS SUBJECT MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

15. The Court has original jurisdiction under the Class Action Fairness Act ("CAFA"). 28 U.S.C. §§ 1332(d), 1453(b). An action may be removed pursuant to CAFA if: (a) it is a civil action filed "under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure"; (b) any member of the putative class is a citizen of a different state from any defendant; (c) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (d) the number of members in the putative class, in the aggregate, is no less than 100. 28 U.S.C. § 1332(d)(1)(B), (d)(2), (d)(5). All four requirements are met here.

16. Congress expressly noted that it enacted CAFA to "restore the intent of the framers of the United States Constitution by providing for Federal court

consideration of interstate cases of national importance under diversity jurisdiction." 28 U.S.C. § 1711 note. Accordingly, no antiremoval presumption applies. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Instead, "CAFA's provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." *Id.*; *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) ("Congress intended CAFA to be interpreted expansively.").

17. ***Class action***—This action is a "class action" because it is a civil action filed under Haw. R. Civ. P. 23, a "similar State . . . rule of judicial procedure" to Fed. R. Civ. P. 23. 28 U.S.C. § 1332(d)(1)(B); *see also* Ex. 1 ¶¶ 38–48 (alleging that the action is a class action under Haw. R. Civ. P. 23(a), (b)(2), and (b)(3)); *Kalima v. State*, 468 P.3d 143, 158 (Haw. 2020) (Haw. R. Civ. P. 23(b)(3) is an "analogue" of the federal Rule); *Sheehan v. Grove Farm Co.*, 163 P.3d 179, 191 n.13 (Haw. Ct. App. 2005) (Haw. R. Civ. P. 23(a)(3) and 23(a)(4) are "identical" to their federal counterparts).

18. ***Minimal diversity***—Minimal diversity exists under CAFA if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Minimal diversity exists here because Plaintiff is a Hawaiʻi citizen, Ex. 1 ¶ 12, and at least one of the Defendants is not a citizen of Hawaiʻi. *Id.* ¶¶ 13–17; *see also* 28 U.S.C. § 1332(d)(10) ("For purposes of [CAFA],

an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized.”). For example:

a. Kalshi Inc. is and was, as of the filing of the Complaint, a Delaware corporation with its principal place of business in New York. Ex. 1 ¶ 13. Therefore, Kalshi Inc. is a citizen of Delaware and New York.

b. KalshiEX LLC is and was, as of the filing of the Complaint, a limited liability company formed under the laws of Delaware with its principal place of business in New York. *Id.* ¶ 14. Therefore, KalshiEX is a citizen of Delaware and New York.

c. Kalshi Klear Inc. is and was, as of the filing of the Complaint, a Delaware corporation with its principal place of business in New York. *Id.* ¶ 15. Therefore, Kalshi Klear Inc. is a citizen of Delaware and New York.

d. Kalshi Klear LLC is and was, as of the filing of the Complaint, a limited liability company formed under the laws of Delaware with its principal place of business in New York. *Id.* ¶ 16. Therefore, Kalshi Klear is a citizen of Delaware and New York.

e. Kalshi Trading LLC is and was, as of the filing of the Complaint, a limited liability company formed under the laws of Delaware with its principal place of business in New York. *Id.* ¶ 17. Therefore, Kalshi Trading is a citizen of Delaware and New York.

19. ***Amount-in-controversy***—CAFA’s $5 million amount-in-controversy requirement, 28 U.S.C. § 1332(d)(2), is also satisfied because it is “more likely than not” that the amount in controversy exceeds $5 million. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (applying “preponderance of the evidence standard” where it is “unclear or ambiguous from the face of a state-court

complaint whether the requisite amount in controversy is pled"). The removing party is entitled to rely on reasonable assumptions to show by a preponderance of the evidence that the amount in controversy exceeds $5 million. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015); *see also Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994–95 (9th Cir. 2022) (a defendant's amount-in-controversy allegation is normally accepted when invoking CAFA jurisdiction).

20. Here, under any reasonable set of assumptions, the amount in controversy is highly likely to exceed $5 million. Plaintiff alone claims damages of $129,000, Ex. 1 ¶ 4, even without including the statutorily authorized treble damages and attorneys' fees. *See* Haw. Rev. Stat. § 480-13(b)(1); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998) (including attorneys' fees in amount in controversy where suit is brought under state statute authorizing such an award). Given that the proposed class extends to "[a]ll persons residing in Hawai'i," who lost money on Kalshi, Ex. 1 ¶ 38, the amount in controversy comfortably clears $5 million. Given § 480-13(b)(1)'s authorization of treble damages, the class need only contain 167 members averaging a $10,000 loss to reach the amount in controversy. *See Jauregui*, 28 F.4th at 994–95 (considering the statutory potential for liquidated damages to find that the CAFA amount in controversy was satisfied); *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731 (11th Cir. 2014) (a defendant need only show that punitive damages in an amount meeting the CAFA jurisdictional

minimum "*could* be awarded").

21. ***Numerosity***—Because Plaintiff seeks to bring claims on behalf of a putative class of at least 100 people, CAFA's numerosity requirement is met. 28 U.S.C. § 1332(d)(5)(B); *see* Ex. 1 ¶¶ 38 (seeking to recover on behalf of "[a]ll persons residing in Hawai'i who purchased sports event contracts through Kalshi and suffered a net monetary loss from those transactions during the applicable class period"), 40 ("the Class is sufficiently numerous that joinder is impracticable").

## III. THE COURT HAS DIVERSITY JURISDICTION

22. This Court has diversity jurisdiction over this action because complete diversity exists and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

23. ***Complete diversity***—The parties to this action are completely diverse.

24. Plaintiff is a citizen of Hawai'i and the proposed class is explicitly limited to "Hawai'i residents." Ex. 1 ¶¶ 12, 22; *see also id.* ¶¶ 1 (referencing "persons residing in Hawai'i"), 11 (describing "a Hawai'i only class").

25. Pursuant to 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." A corporation's principal place of business is the location where its officers direct, control, and coordinate the corporation's activities—the "nerve center"—and is

normally wherever the corporate headquarters are located. *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010). Thus, for purposes of diversity jurisdiction, each Defendant is a citizen of Delaware and New York, *see supra* ¶ 18,[3] and no Defendant is a citizen of Hawai‘i.

26. Therefore, Plaintiff and Defendants are citizens of different states,[4] and complete diversity exists.

27. ***Amount-in-controversy***—The amount-in-controversy requirement is comfortably satisfied. Diversity jurisdiction requires a minimum amount in controversy of $75,000, 28 U.S.C. § 1332(a), while Plaintiff "personally seeks $129,000" of "sports loss damages." Ex. 1 ¶ 28. Furthermore, "where some, but not all, of the plaintiffs in a diversity action allege a sufficient amount in controversy," the court has original jurisdiction over the entire suit. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566 (2005); *see also id.* at 552 ("once a court has original jurisdiction over some claims in the action, it may exercise

---

3 Kalshi Klear LLC's sole member is Kalshi Klear Inc., while Kalshi Inc. is the sole member of Kalshi Trading LLC and KalshiEX LLC, so the LLC Defendants are citizens of Delaware and New York. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 381 (2016) (the citizenship of an unincorporated entity for diversity purposes depends on the citizenship of its members).

4 The existence of the Doe Defendants does not affect diversity either. *See* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

supplemental jurisdiction over additional claims that are part of the same case or controversy"); *Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1177–78 (9th Cir. 2025) (similar). Accordingly, the Court may exercise supplemental jurisdiction over any class member's claim that does not independently meet the amount-in-controversy requirement.

28. For these reasons, this action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and which may be removed by Defendants to this Court pursuant to 28 U.S.C. § 1441 based on diversity jurisdiction.

## IV. THE COURT HAS FEDERAL QUESTION JURISDICTION

29. This Court has federal question jurisdiction over this action because Plaintiff's claims, although pleaded under state law, Ex. 1 ¶¶ 11, 19, 22, necessarily depend on the resolution of a substantial question of federal law. 28 U.S.C. § 1331.

30. An action arises under federal law if the complaint establishes "that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)). The question of federal law must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court

without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

31. ***Federal law is necessarily raised***—Plaintiff cannot prevail without proving that Kalshi's sports event contracts are unlawful. His theory of deception is that Kalshi's statement that its contracts are "legal in all 50 states" was "false" or "likely to mislead" because the contracts constitute "gambling" under Hawaiʻi law. Ex. 1 ¶¶ 26, 34, 52. In order to prove his claim, Plaintiff must demonstrate that Kalshi's contracts are *not* legal in Hawaiʻi (and, therefore, not "legal in all 50 states"). Thus, the "unlawfulness" of Kalshi's event contracts is a necessary part of Plaintiff's case-in-chief. *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 57 (2005) (courts assume that "plaintiffs bear the burden of persuasion regarding the essential aspects of their claims"). In considering whether Kalshi's contracts are legal in Hawaiʻi, a court must consider both state and federal law. *See, e.g.*, *Cocroft v. Graham*, 122 F.4th 176, 182 (5th Cir. 2024) (whether something "is legal under the laws of the [state] jurisdiction where it would occur," a court "necessarily and especially" must consider federal law, because "federal law is the law of *every* United States jurisdiction"). *Cf. QueerDoc, PLLC v. U.S. Dep't of Just.*, 187 F.4th 1112, 1144 (9th Cir. 2026) (rejecting claim that administrative subpoena had an unlawful purpose because it sought to investigate activity that is lawful under state law, reasoning that "[w]hether an activity is authorized by state law is irrelevant to

determining the lawful authority for a federal investigation, because federal law is supreme"). Accordingly, to prove his affirmative claim, Plaintiff must demonstrate that federal law does not authorize Kalshi's event contracts in Hawai'i under the CEA.

32. ***Federal law is disputed***—Kalshi disputes liability because the event contracts at issue were traded on an exchange market that is federally regulated as a DCM by the CFTC. On the merits, whether event contracts constitute unlawful gambling or swap transactions subject to the exclusive jurisdiction of the CFTC is "the central point of dispute." *Gunn*, 568 U.S. at 259 (federal issue was disputed because plaintiff argued that the patent-law experimental-use exception applied, while defendants argued that it did not). Plaintiff himself places the question in dispute, alleging that Kalshi's "position that federal law displaced state gambling regulation" had been rejected by the Ninth Circuit in *KalshiEX, LLC v. Assad*, 190 F.4th 1098 (9th Cir. 2026). Ex. 1 ¶¶ 9, 29, 53. In order to prove that Kalshi's conduct is not legal in Hawai'i, *see supra* ¶ 31, Plaintiff must prove that the CEA does not authorize Kalshi's conduct under federal law and that federal law does not displace state law.

33. Kalshi disputes that characterization, and the issue remains disputed in this case, given the ongoing division among courts nationwide as to it.[5] Here, whether Kalshi's event contracts are lawful under the CEA is dispositive of Plaintiff's claim, "such that it will be supported if the . . . laws of the United States are given one construction or effect, and defeated if they receive another." *Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936). "This is just the sort of 'dispute . . . respecting the . . . effect of [federal] law' that *Grable* envisioned." *Gunn*, 568 U.S. at 259 (alteration in original) (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005)).

34. ***The federal question is substantial***—The question raised under federal law is substantial, as Plaintiff's right to recovery under Hawai'i law depends on

[5] In a recent preliminary injunction decision, the Ninth Circuit split with the Third Circuit on whether Kalshi's event contracts are swaps subject to the CFTC's exclusive jurisdiction. Although the Ninth Circuit agreed that the CEA "preempts state regulation of swaps that are 'traded or executed' on a DCM," *Assad*, 190 F.4th at 1109, it concluded that Kalshi's sports event contracts likely are not swaps. *Compare id.* at 1109–20 (holding that Kalshi's event contracts likely are not "swaps" under the CEA and the "CEA likely does not preempt Nevada's gaming regulations as applied to Kalshi's sports event contracts"), *with Flaherty*, 172 F.4th at 226 (holding that Kalshi's event contracts are "swaps traded on a CFTC-licensed DCM" and therefore subject to the CFTC's exclusive jurisdiction). Courts remain divided on whether the CEA preempts state law from governing Kalshi's event contracts. *See United States v. Minnesota*, No. 26-cv-2661 (KMM/DTS), 2026 WL 2150211, at *13 (D. Minn. July 27, 2026) ("Although the decisions are by no means uniform, several courts that have considered the meaning of the statutory definition of swap have found that event contracts involving the outcomes of sporting events fall within the definition's scope.").

whether the event contracts are federally authorized and regulated swaps under the CEA, which would necessarily mean they cannot be "unlawful" so as to allow Plaintiff to recover for unfair or deceptive advertising under Haw. Rev. Stat. § 480-2. This federal question presents a "pure issue of law," which carries greater importance for the federal system than a question that is "'fact-bound and situation-specific.'" *City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020) (quoting *Empire*, 547 U.S. at 700–01). Subjecting Kalshi's event contracts to Hawai'i law would call into question the validity of the CEA, undoubtedly a substantial federal question. *See Gunn*, 568 U.S. at 261 (explaining that a question is substantial where, for example, it calls into question the validity of a federal statute); *Ga. Gambling Recovery LLC v. Kalshi Inc.*, No. 25-cv-310, 2026 WL 279375, at *3 (M.D. Ga. Feb. 3, 2026) (concluding that "the resolution of whether the event contracts are governed exclusively by the CEA" presented a "substantial question of federal law").

35. "[T]he importance of the issue to the federal system as a whole," *Gunn*, 568 U.S. at 260, is indisputable. The United States and the CFTC have jointly sued or intervened against twelve states to enjoin enforcement of state gambling laws against DCMs and other market participants, including KalshiEX (the "CFTC Actions").[6] The CFTC has also filed an amicus brief in support of its exclusive

[6] *See* Compl., *United States v. Arizona*, No. 26-cv-2246 (D. Ariz. Apr. 2, 2026), Dkt. No. 1 ("CFTC Ariz. Compl."); Compl., *United States v. Connecticut*, No. 26-

jurisdiction. Amicus Br. of CFTC, *N. Am. Derivatives Exch., Inc. v. Nev. ex rel. Nev. Gaming Control Bd.*, 2026 WL 2546926 (9th Cir. Aug. 28, 2026) (No. 25-7187), Dkt. No. 38.2 ("CFTC Amicus Br.").

36. The CFTC Actions reflect the importance of the uniform regulatory design enacted by Congress, which is at stake in this action. *See, e.g.*, CFTC Ariz. Compl. ¶ 46 ("Congress recognized the need for uniform, nationwide regulation of futures and options markets because concurrent regulation by the states or other federal regulators such as the Securities and Exchange Commission could lead to 'total chaos.'"). The CEA vested the CFTC with exclusive jurisdiction over DCMs in order to replace a patchwork of state regulation with a single federal regime. *See id.*; 7 U.S.C. § 2(a)(1)(A); *Flaherty*, 172 F.4th at 230 ("Congress created the CFTC and amended the Act to do away with the patchwork of state regulations and bring futures trading on DCMs under the exclusive jurisdiction of the CFTC."); *Coinbase*,

---

cv-498 (D. Conn. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. Illinois*, No. 26-cv-3659 (N.D. Ill. Apr. 2, 2026), Dkt. No. 1; Compl., *United States v. New York*, No. 26-cv-3404 (S.D.N.Y. Apr. 24, 2026), Dkt. No. 1; Compl., *United States v. Wisconsin*, No. 26-cv-749 (E.D. Wis. Apr. 28, 2026), Dkt. No. 1; Compl., *United States v. Minnesota*, No. 26-cv-2661 (D. Minn. May 19, 2026), Dkt. No. 1; Compl., *United States v. New Mexico*, No. 26-cv-1912 (D.N.M. June 12, 2026), Dkt. No. 1; Compl., *United States v. Kentucky*, No. 26-cv-49 (E.D. Ky. June 23, 2026), Dkt. No. 1; Intervenor Compl., *KalshiEX LLC v. Furcolo*, No. 26-cv-327 (D.R.I. June 26, 2026), Dkt. No. 37; Compl., *United States v. Utah*, No. 26-cv-1055 (D. Utah Oct. 26, 2026), Dkt. No. 1; Compl., *United States v. Arkansas*, No. 26-cv-1255 (E.D. Ark. Nov. 12, 2026), Dkt. No. 1; Compl., *United States v. Louisiana*, No. 26-cv-2612 (E.D. La. Nov. 13, 2026), Dkt. No. 1.

2026 WL 2969682, at *15 (state laws that "subject Kalshi to non-uniform regulation" contravene the CEA); *see also* H.R. Rep. No. 93-975, at 76 (1974) (CEA brought "all exchanges . . . under the same set of rules"); Consol. Pls.' Mot. for Prelim. Inj. & TRO at 2, 9–10, *KalshiEX LLC v. Johnson*, 832 F. Supp. 3d 954 (D. Ariz. 2026) (No. 2:26-cv-01715), Dkt. No. 49 ("CFTC TRO Br.") ("a patchwork of 50 state regulations" of DCMs is "precisely what Congress sought to avoid with the CEA").

37. Plaintiff's action threatens to reintroduce this patchwork of state regulation antithetical to the uniform scheme of the CEA. As the CFTC has explained, compliance with state-specific prohibitions on event contracts would be "impossible" for DCMs given their "federal mandate to provide impartial national access." CFTC Ariz. Compl. ¶ 72. Allowing private parties to enforce state anti-gambling laws against Kalshi would "subvert" the CEA, *id.* ¶ 12, and "directly conflict[ ] with the full purposes and objectives" of Congress. *Flaherty*, 172 F.4th at 230; *see also* CFTC TRO Br. at 17 (similar); CFTC Amicus Br. at 2 (application of state anti-gambling law to DCMs constitutes a "fundamental threat to Congress's statutory design").

38. The CFTC's recent regulatory actions also confirm the robust federal interest in the event contracts at issue here. Earlier this year, the CFTC withdrew a

rule proposal and staff advisory regarding event contracts[7] and published guidance supporting lawful innovation in prediction markets, including sports event contracts.[8] In June, the CFTC published a Notice of Proposed Rulemaking ("June NPRM") proposing amendments to its rules to specify which event contracts may be found contrary to the public interest. Prediction Markets; Public Interest Determinations, 91 Fed. Reg. 35,806 (proposed June 12, 2026) (to be codified at 17 C.F.R. pt. 40). The June NPRM explains that certain event contracts fall within the CEA's definition of "swap." *Id.* at 35,808. It also states that the CFTC's jurisdiction "supersedes State as well as Federal agencies" because "commodity derivatives markets require nationally uniform rules governing the listing, trading, clearing, settlement, surveillance, and enforcement of financial instruments traded in these markets," and that the CEA "expressly preempts state laws that attempt to regulate the operation of, or transactions on, CFTC-registered exchanges." *Id.* In July, the CFTC released another notice of proposed rulemaking regarding the relationships between CFTC-regulated entities and affiliated market participants.[9] And as recently as this month, the CFTC issued guidance formalizing its long-held view that

---

[7] CFTC Staff Letter No. 26-04, Withdrawal of CFTC Staff Advisory 25-36 (Feb. 4, 2026), *available at* https://perma.cc/U2W6-LC7A.

[8] CFTC Staff Letter No. 26-08, Prediction Markets Advisory (Mar. 12, 2026), *available at* https://perma.cc/79PX-7Z7N.

[9] Conflicts and Affiliations, 91 Fed. Reg. 50,926 (Aug. 6, 2026).

a DCM's impartial-access obligation under 17 C.F.R. § 38.151(b) means that a DCM must offer its products in all 50 states, explaining that "[d]erivatives markets must operate on a uniform basis at a national scale in order to achieve the CEA's purpose."[10] The CFTC explained that a DCM that "restricts access based on domestic geographic location . . . excludes otherwise eligible individuals," which is "inconsistent with the CEA and Commission rules and regulations."[11] These actions reflect that the federal government views this issue—application of state gambling laws to derivatives trading on DCMs—as important to the federal system.

39. ***The federal issue is capable of resolution without disrupting the federal-state balance***—This Court is best positioned to resolve the question of whether the transactions at issue constitute unlawful gambling or, instead, federally authorized event contracts. Plaintiff's claims threaten to interfere with the action of a federal agency, the CFTC, which "has an interest in a federal forum adjudicating its authority under federal law." *Ga. Gambling Recovery*, 2026 WL 279375, at *3. The implications of this action for federal policy "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

---

[10] DCM Impartial Access Requirements, 91 Fed. Reg. 72,407, 72,409 (Nov. 10, 2026) ("Impartial Access Guidance").

[11] Impartial Access Guidance, 91 Fed. Reg. at 72,409–10.

40. In addition, "the federal issue here arises from a narrow federal statute that [Kalshi] contend[s] grants exclusive federal authority over the legality of the event contracts that give rise to Plaintiff's claims." *Ga. Gambling Recovery*, 2026 WL 279375, at *3. Therefore, "exercising federal jurisdiction over this action and others similar to it would not likely have a significant effect on the federal-state division of labor." *Id.* (citing *Grable*, 545 U.S. at 315).

## V. KALSHI MEETS THE OTHER PROCEDURAL REQUIREMENTS FOR REMOVAL

41. Plaintiff filed the Complaint on October 1, 2026. Kalshi accepted service of the Complaint on October 28, 2026. This Notice of Removal is being filed within 30 days of Kalshi's receipt of the Complaint; thus, the removal is timely filed under 28 U.S.C. § 1446(b)(1) and (c)(1).

42. Defendants "Does 1–50" need not join Kalshi's Notice of Removal. *See Emrich*, 846 F.2d at 1193 n.1 (unknown parties need not be joined in removal); *Cmty. Bldg. Co. v. Md. Cas. Co.*, 8 F.2d 678, 679 (9th Cir. 1925) ("[D]efendants over whom the court has not acquired jurisdiction may be disregarded in removal proceedings[.]").

43. Venue is proper pursuant to 28 U.S.C. §§ 91, 1441(a), and 1446(a) because the United States District Court for the District of Hawaiʻi is the federal judicial district court embracing the Circuit Court of the First Circuit, where the Complaint was filed.

44. In accordance with 28 U.S.C. § 1446(d), written notice of this Notice of Removal will be promptly provided to Plaintiff and filed with the Circuit Court of the First Circuit of the State of Hawai‘i. A copy of the Notice of Filing of Notice of Removal is attached hereto as Ex. 2.

45. No previous application has been made for the relief requested in this Notice of Removal.

## CONCLUSION

WHEREFORE, Kalshi removes this action, now pending in the Circuit Court of the First Circuit, State of Hawai‘i, consistent with 28 U.S.C. §§ 1331, 1332(a), 1332(d), 1367, 1441, and 1453, and respectfully requests that the Circuit Court of the First Circuit proceed no further with respect to the removed action. If any question arises as to the propriety of the removal of this action, Kalshi respectfully requests the opportunity to present a brief and oral argument in support of its position that this case is removable.

Dated: November 17, 2026

*/s/ David A. Robyak*

**KLEIN LAW GROUP, LLLC**
Robert G. Klein #1192-0
Kurt W. Klein #10357-0
David A. Robyak #10321-0
James M. Yuda #10328-0
Jason W. Jutz #10659-0
1001 Bishop Street, Suite 2788
Honolulu, HI 96813
Telephone: 808.591.8822
Facsimile: 808.427.9761
rgk@kleinlg.com

**MILBANK LLP**
Tawfiq S. Rangwala (*pro hac vice* forthcoming)
Katherine Kelly Fell (*pro hac vice* forthcoming)
Matthew J. Laroche (*pro hac vice* forthcoming)
55 Hudson Yards
New York, NY 10001-2163
Telephone: 212.530.5000
Facsimile: 212.530.5219
trangwala@milbank.com
kfell@milbank.com
mlaroche@milbank.com

*Attorneys for Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon the following counsel via electronic mail and CM/ECF, this 17th day of November 2026.

Brandee J.K. Faria
**LAW OFFICES OF BRANDEE J.K. FARIA, LLLC**
1164 Bishop Street, Suite 933
Honolulu, HI 96813
Telephone: 808.523.2300
brandee@farialawfirm.com

/s/ *David A. Robyak*

**KLEIN LAW GROUP, LLLC**
Robert G. Klein #1192-0
Kurt W. Klein #10357-0
David A. Robyak #10321-0
James M. Yuda #10328-0
Jason W. Jutz #10659-0

*Attorneys for Kalshi Inc., KalshiEX LLC, Kalshi Klear Inc., Kalshi Klear LLC, and Kalshi Trading LLC*