# EXHIBIT 1

Brandee J.K. Faria #6970
**LAW OFFICES OF BRANDEE J.K. FARIA, LLLC**
1164 Bishop Street, Suite 933
Honolulu, HI 96813
Telephone: (808) 5232300
brandee@farialawfirm.com

Electronically Filed
FIRST CIRCUIT
1CCV-26-0001429
01-OCT-2026
05:07 PM
Dkt. 1 CMP

Attorney for Plaintiff BRANDON FARIAS,
individually and on behalf of all others
similarly situated.

**IN THE CIRCUIT COURT OF THE FIRST CIRCUIT**

**STATE OF HAWAI'I**

| | |
|---|---|
| BRANDON FARIAS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KALSHI INC.; KALSHIEX LLC; KALSHI KLEAR INC.; KALSHI KLEAR LLC; KALSHI TRADING LLC; and DOES 1–50,<br><br>Defendants | Civil No. ___________<br>(Other Civil Action)<br><br>**CLASS ACTION COMPLAINT; JURY DEMAND** |

## CLASS ACTION COMPLAINT

1. Plaintiff BRANDON FARIAS ("Plaintiff"), individually and on behalf of all others similarly situated in Hawai'i, brings this class action against KALSHI INC., KALSHIEX LLC, KALSHI KLEAR INC., KALSHI KLEAR LLC, and KALSHI TRADING LLC (collectively, "Kalshi" or "Defendants") to recover net sports wagering losses and other relief arising from Kalshi's offering, marketing, and operation of sports event contracts to persons residing in Hawai'i. Plaintiff alleges the following upon personal knowledge as to himself and his own acts



Exhibit 1

and experiences, and upon information and belief, including investigation by counsel, as to all other matters.

## NATURE OF THE ACTION

2. Kalshi owns and operates an online and app based platform that it markets as a “prediction market.” Beginning in 2025, Kalshi expanded into sports event contracts that permit consumers to stake money on the outcome of sporting events, individual player performance, point spreads, totals, and combinations of sports outcomes. Kalshi has advertised these products as sports betting that is “Legal in 50 states.”

3. Plaintiff is a Hawai‘i consumer. He discovered Kalshi through social media and television advertising, including advertising representing that Kalshi’s sports betting was “legal in all 50 states,” and through word of mouth from friends. Those representations were material to Plaintiff’s decision to use Kalshi while located in Hawai‘i.

4. From approximately September 10 through September 28, 2026, Plaintiff placed hundreds of sports wagers through Kalshi from Hawai‘i. Plaintiff estimates that he wagered approximately $129,000+ on sports and seeks recovery in this action of his losses of $129,000+ in his net sports wagering losses, exclusive of any statutory multiplication, fees, costs, or interest authorized by Hawai‘i law.

5. Kalshi required Plaintiff to upload his driver’s license to open and use his account, thereby obtaining information identifying Plaintiff and his Hawai‘i residence while continuing to make its sports event contracts available to him in Hawai‘i.

6. During Plaintiff’s short period of use, he reported a system glitch to Kalshi. Kalshi support was unresponsive and dismissive. This experience reinforced Plaintiff's concern that Kalshi and its platform did not operate as the lawful and properly regulated product that had been

represented to him.7. Hawaiʻi law defines “gambling” to include staking or risking something of value upon the outcome of a contest of chance or future contingent event not under the bettor’s control or influence, upon an agreement that something of value will be received upon a certain outcome. HRS § 712-1220. “Bookmaking” includes advancing gambling activity by accepting bets from members of the public upon future contingent events.

8. Kalshi’s sports event contracts offered to Plaintiff were wagers on future sporting events and sports related contingencies not within Plaintiff’s control. Kalshi solicited and induced Hawaiʻi residents to participate, arranged the financial and recording phases of the transactions, accepted fees, and, through affiliated or coordinated market making activity, participated in the markets offered to consumers.

9. On August 28, 2026, the United States Court of Appeals for the Ninth Circuit held, in the context of Nevada’s enforcement of its gaming laws, that Kalshi had not shown that its sports event contracts are “swaps” within the Commodity Exchange Act’s exclusive jurisdiction provision and affirmed dissolution of an injunction against state gaming enforcement as to sports event contracts. KalshiEX LLC v. Assad, No. 257516 (9th Cir. Aug. 28, 2026).

10. Plaintiff alleges that marketing sports event wagering to Hawaiʻi consumers as “legal in all 50 states,” while offering transactions that constitute gambling under Hawaiʻi law, is unfair and deceptive conduct in trade or commerce under Hawai’i Revised Statutes (“HRS”) § 480-2. Plaintiff further alleges that the agreements and transactions procured through that unfair or deceptive conduct are void and unenforceable under HRS § 480-12.

11. This action is brought solely under Hawaiʻi law on behalf of a Hawai’i only class. Plaintiff asserts no federal cause of action and no claim on behalf of a nationwide class. The

claims turn on conduct directed to Hawai‘i consumers, transactions made by persons in Hawai‘i, and Hawai‘i consumer protection and restitution law.

## PARTIES

12. Plaintiff BRANDON FARIAS is a natural person and resident and citizen of the City of Kamuela, County of Hawai’i, State of Hawai‘i. Plaintiff used Kalshi in Hawai‘i during September 2026 and lost money on sports event contracts offered through Kalshi’s mobile or web platform.

13. Defendant KALSHI INC. is alleged to be a Delaware corporation headquartered at 594 Broadway, Room 407, New York, New York 10012, and the parent of the other Kalshi entities. It participates in the operation and marketing of the Kalshi platform.

14. Defendant KALSHIEX LLC is alleged to be a Delaware limited liability company headquartered at 594 Broadway, Room 407, New York, New York 10012, and a wholly owned subsidiary of Kalshi Inc. It operates the designated contract market on which Kalshi’s sports event contracts are offered.

15. Defendant KALSHI KLEAR INC. is alleged to be a Delaware corporation headquartered at 594 Broadway, Room 407, New York, New York 10012 and affiliated with the Kalshi enterprise.

16. Defendant KALSHI KLEAR LLC is alleged to be a Delaware limited liability company headquartered at 594 Broadway, Room 407, New York, New York 10012 and affiliated with the Kalshi enterprise.

17. Defendant KALSHI TRADING LLC is alleged to be a Delaware limited liability company headquartered at 594 Broadway, Room 407, New York, New York 10012. Upon

information and belief, it operates as a market maker for Kalshi markets and buys and sells event contracts on the platform.

18. Plaintiff is presently unaware of the true names and capacities of DOES 1–50 and therefore sues them by fictitious names. Plaintiff will amend this Complaint when and if their identities and responsibilities are ascertained.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction under the Constitution and laws of the State of Hawaiʻi. Plaintiff asserts claims exclusively under Hawaiʻi law.

20. This Court has personal jurisdiction over Defendants because Defendants purposefully made their online and mobile platform available to Hawaiʻi consumers; advertised and represented that sports betting through Kalshi was legal in all 50 states; knowingly accepted Plaintiff as a Hawaiʻi customer after requiring identifying information including his driver's license; entered into repeated transactions with Plaintiff while he was located in Hawaiʻi; and caused injury to Plaintiff and putative class members in Hawaiʻi.

21. Venue is proper in the First Circuit because Plaintiff resides in the City and County of Honolulu, used Kalshi and entered the challenged sports event transactions in this Circuit, received the challenged representations here, and suffered the alleged monetary injury here.

22. The proposed Class is limited to Hawaiʻi residents and Hawaiʻi transactions. Plaintiff seeks relief solely on behalf of the Hawaiʻi Class defined herein and asserts no claim under federal law or the law of any other state.

## FACTUAL ALLEGATIONS

A. Kalshi's Sports Event Platform and Advertising

23. Kalshi describes itself as a prediction market that offers "event contracts." In early 2025, it began offering sports event contracts. Kalshi publicly promoted sports markets as available to Americans in all 50 states and advertised "Bet on the NFL" and "Legal in 50 states."

24. Kalshi's sports markets include transactions tied to game winners, point spreads, over/unders, player propositions, and multileg combinations that function in the same practical manner as sports wagers.

25. Kalshi also promotes its platform as peer-to-peer. Upon information and belief, however, Kalshi Trading LLC and other sophisticated market makers provide liquidity and may take positions opposite retail consumers. Regardless of the identity of the counterparty, Kalshi solicits, facilitates, records, clears, and profits from sports event transactions placed by consumers.

B. Plaintiff's Hawai‘i Transactions

26. Plaintiff encountered Kalshi through social media and television advertising and through friends. Of particular importance, Kalshi represented that its sports betting product was "legal in all 50 states." Plaintiff understood that representation to include Hawai‘i.

27. Plaintiff opened and used a Kalshi account from Hawai‘i. Kalshi required him to provide a driver's license. From September 10 through September 28, 2026, Plaintiff placed hundreds of sports event wagers from Hawai‘i. Kalshi therefore knew or had information sufficient to know before accepting Plaintiff's wagers that Plaintiff was a Hawai‘i resident, yet continued permitting him to access, fund, and place hundreds of sports wagers through its platform.

28. The realized profit and loss records supplied by Plaintiff reflect thousands of transactions during the relevant period and substantial realized losses. For purposes of this Complaint, Plaintiff limits the sports loss damages he personally seeks $129,000, subject to statutory remedies available under HRS Chapter 480.

29. Plaintiff would not have opened a Kalshi account or placed the challenged sports wagers had Kalshi truthfully disclosed that its representation of "legal" sports betting in Hawai'i was disputed, that Hawai'i law broadly prohibits gambling on sporting events and other future contingent events, and that Kalshi's position that federal law displaced state gambling regulation had been rejected by the Ninth Circuit before Plaintiff began wagering.

30. Plaintiff contacted Kalshi concerning a system glitch. The response was unresponsive and dismissive. The experience reinforced Plaintiff's concern that the platform did not operate as the lawful and adequately regulated product that had been represented to him.

C. Hawai'i Law Prohibits the Gambling Activity at Issue

31. HRS § 712-1220 defines gambling as staking or risking something of value on a contest of chance or a future contingent event not under the person's control or influence, upon an agreement or understanding that the person or someone else will receive something of value upon a certain outcome. The statute separately defines bookmaking as advancing gambling activity by accepting bets from members of the public upon future contingent events.

32. Plaintiff's sports event transactions satisfy the ordinary statutory description of gambling: Plaintiff risked money on future sports outcomes and sports related contingencies outside his control in exchange for a payout if the selected outcome occurred.

33. Kalshi materially aided and advanced the challenged activity by creating and maintaining the platform, soliciting and inducing participation, conducting the trading phases, arranging the financial and recording phases, and accepting compensation in connection with the transactions.

34. Hawaiʻi does not authorize commercial online sports wagering of the type offered to Plaintiff. Plaintiff alleges that Defendants' representation that their sports betting product was lawful in Hawaiʻi was false or, at minimum, likely to mislead reasonable Hawaiʻi consumers.

D. The Challenged Agreements Are Void Under HRS § 480-12

35. HRS § 480-12 provides that "[a]ny contract or agreement in violation of this chapter is void and is not enforceable at law or in equity." Accordingly, "a transaction that includes an unfair or deceptive business practice is typically null and subject to rescission." *Sakal v. Association of Apartment Owners of Hawaiian Monarch*, 148 Hawaiʻi 1, 8 n.11, 466 P.3d 399, 406 n.11 (2020).

36. Plaintiff alleges that the challenged sports event agreements were procured and performed through unfair or deceptive acts or practices, including the representation that sports betting through Kalshi was "legal in all 50 states" and the omission of the material risk that Hawaiʻi gambling law prohibited or rendered unlawful the transactions offered to Plaintiff.

37. Because the challenged sports wagering agreements were entered into through conduct violating HRS Chapter 480, those agreements are void and unenforceable under HRS § 480-12. Plaintiff therefore seeks rescission of the challenged transactions and restitution restoring Plaintiff and Class members, to the extent practicable, to the positions they occupied before entering those transactions. *Sakal v. Association of Apartment Owners of Hawaiian Monarch*, 148 Hawaiʻi 1, 8 n.11, 466 P.3d 399, 406 n.11 (2020).

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action pursuant to Hawaiʻi Rules of Civil Procedure Rule 23(a), (b)(2), and (b)(3), on behalf of himself and the following proposed class ("Hawaiʻi Class"):

> All persons residing in Hawaiʻi who purchased sports event contracts through Kalshi and suffered a net monetary loss from those transactions during the applicable class period.

39. Excluded from the Class are Defendants; their parents, subsidiaries, affiliates, officers, directors, and employees; the judicial officers assigned to this action and their immediate families; class counsel and their employees; persons who timely and validly opt out; and persons whose claims have been finally adjudicated or released.

40. Numerosity. Upon information and belief, the Class is sufficiently numerous that joinder is impracticable. Kalshi assigns a unique sub-trader identification to each user and maintains transaction, identity-verification, geolocation, payment, and trading records from which Hawaiʻi users and their sports-event transactions and net results can be identified.

41. Commonality and Predominance. Common questions include whether Kalshi offered sports event contracts to persons located in Hawaiʻi; whether those transactions constitute gambling within HRS § 712-1220; whether Kalshi represented that its sports betting was legal in all 50 states; whether those representations or related omissions were unfair or deceptive under HRS § 480-2; whether rescission and restitution of net sports wagering losses are available on a class wide basis under HRS §§ 480-12 and 480-13; whether the challenged agreements are void under HRS § 480-12; whether Kalshi was unjustly enriched; and the proper method for calculating net sports losses and restitution from Kalshi's records.

42. Typicality**.** Plaintiff's claims are typical because he, like other Class members, was a Hawaiʻi consumer who used the same Kalshi platform to purchase sports event contracts, was subjected to the same allegedly unfair or deceptive course of conduct concerning the offering and

marketing of sports-event contracts to Hawaiʻi consumers, and suffered the same type of monetary injury—net losses from those transactions—as the members of the Class.

43. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests antagonistic to the Class and has retained counsel experienced in complex and class action litigation.

44. Rule 23(b)(3) Superiority. A class action is superior to individual litigation because the core liability issues arise from standardized platform conduct and can be resolved with common evidence. Individual suits would create duplicative proceedings and risk inconsistent results, whereas a class proceeding permits efficient adjudication and use of Defendants' centralized electronic records.

45. Related Litigation**.** Counsel's review of available Hawaiʻi state and federal court records has revealed no other pending putative class action brought specifically on behalf of a Hawaiʻi only class asserting claims under HRS Chapter 480 arising from Kalshi's offering and marketing of sports event contracts to Hawaiʻi consumers. Accordingly, Plaintiff is unaware of any competing Hawaiʻi class action that would weigh against concentrating the claims of the proposed Hawaiʻi Class in this Court. See HRCP Rule 23(b)(3)(B)-(C).

46. HRCP Rule 23(b)(2). Defendants have acted or refused to act on grounds generally applicable to the Class by uniformly offering and marketing sports event contracts to Hawaiʻi consumers. Defendants continue to promote Kalshi in Hawai'i, therefore declaratory and/or injunctive relief may be appropriate with respect to the Class as a whole.

47. Ascertainability and Manageability. Class membership can be determined objectively from residence or location information, identity verification records, account records, and

transaction histories maintained by Defendants. Damages can be calculated using common account level data reflecting sports event purchases, payouts, fees, and net results.

48. Plaintiff reserves the right to amend the Class definition or seek subclasses should the need arise based on facts developed through discovery.

**COUNT I**

**VIOLATION OF HRS §§ 480-2, 480-12, AND 480-13**
*(Unfair or Deceptive Acts or Practices)*

49. Plaintiff incorporates all of the preceding allegations as though fully set forth herein.

50. Plaintiff and Class members are "consumers" within the meaning of HRS § 480-1 because, primarily for personal purposes, they purchased or obtained services and/or committed money or property in personal investments through Kalshi's platform. Defendants engaged in "trade or commerce" within the meaning of HRS Chapter 480 by marketing, offering, facilitating, and profiting from the challenged transactions.

51. HRS § 480-2 prohibits unfair or deceptive acts or practices in the conduct of trade or commerce.

52. Defendants engaged in unfair or deceptive acts or practices by representing, directly or by implication, that sports betting through Kalshi was "legal in all 50 states," including Hawai'i, while offering Hawai'i consumers sports event transactions that Plaintiff alleges constitute gambling under HRS § 712-1220 and are not authorized commercial sports wagering under Hawai'i law.

53. Defendants further failed to disclose material information necessary to prevent their legality representations from being misleading, including that state regulators and courts had challenged Kalshi's position that federal commodities law displaced state gambling law. By the

time of Plaintiff's September 2026 transactions, the Ninth Circuit had rejected Kalshi's request to prevent Nevada from enforcing its state gaming laws against Kalshi's sports-event contracts. Kalshi necessarily had actual knowledge of that decision because Kalshi itself was the appellant that sought the injunction and prosecuted the appeal.

54. The challenged conduct was likely to mislead reasonable consumers acting reasonably under the circumstances. The legality of a sports wagering platform is material to a reasonable Hawai‘i consumer deciding whether to open an account, provide identification, deposit funds, and wager money.

55. Plaintiff relied on the legality representation and was injured in his money and property by entering and losing money on the challenged sports event transactions. Plaintiff seeks no more than $129,000 in his own net sports wagering losses in this action, before application of any statutory remedies or other enhancements.

56. Under HRS § 480-13(b), a consumer injured by a violation of HRS § 480-2 may recover damages, statutory multiplication where authorized, reasonable attorney’s fees, costs, and appropriate injunctive relief. HRS § 480-13(c) applies Chapter 480 remedies in class actions subject to its terms.

57. Under HRS § 480-12, contracts or agreements in violation of Chapter 480 are void and unenforceable at law or in equity. Plaintiff therefore seeks rescission, restitution, and a declaration that the challenged sports event agreements entered into through the unfair or deceptive conduct alleged herein are void, together with restoration of net sports losses to the extent permitted by law.

58. Defendants’ conduct directly and proximately caused Plaintiff’s and Class members’ ascertainable monetary losses.

**COUNT II**

**UNJUST ENRICHMENT / RESTITUTION**

59. Plaintiff incorporates the preceding allegations as though fully set forth herein.

60. Plaintiff and Class members conferred monetary benefits on Defendants through fees, transaction related revenue, spreads, market making activity, and other economic benefits generated by their sports event transactions.

61. Defendants knew of and accepted those benefits. Defendants possessed centralized account and transaction records identifying the transactions and amounts associated with each consumer.

62. Plaintiff and Class members entered the transactions with the reasonable understanding, induced by Defendants' marketing, that Kalshi's sports betting product was lawful in Hawaiʻi.

63. It would be unjust for Defendants to retain benefits obtained through transactions induced by unfair or deceptive representations concerning legality and through agreements that Plaintiff alleges are void under HRS § 480-12.

64. To the extent an express agreement would otherwise govern the subject matter, Plaintiff alleges in the alternative that the agreement is void and unenforceable under HRS § 480-12. This equitable claim is pleaded as an alternative theory of restitution to the extent permitted by Hawaiʻi law.

65. Plaintiff and Class members are entitled to restitution of benefits received by Defendants, and other equitable relief necessary to prevent Defendants from retaining benefits unjustly obtained from the challenged Hawaiʻi sports event transactions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Hawaiʻi Class, respectfully requests that the Court enter judgment and orders:

A. Certifying the Hawaiʻi Class under HRCP Rule 23, appointing Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B. Declaring that the challenged conduct violates HRS § 480-2 and that agreements entered into in violation of HRS Chapter 480 are void and unenforceable under HRS § 480-12;

C. Awarding Plaintiff his proven net sports wagering losses of $129,000 before any statutory multiplication, and awarding Class members their proven net sports wagering losses or restitution as permitted by Hawaiʻi law;

D. Awarding the remedies authorized by HRS § 480-13, including treble damages where applicable, reasonable attorney's fees, and costs, subject to HRS § 480-13(c);

E. Ordering rescission, restitution, and other equitable relief necessary to restore money wrongfully obtained through the challenged transactions;

F. Awarding prejudgment and post-judgment interest as allowed by law;

G. Entering appropriate declaratory and/or injunctive relief concerning the challenged practices in Hawaiʻi; and

H. Awarding such other and further relief as the Court deems just and proper.

DATED: Honolulu, Hawai'i, October 1, 2026.

*/s/ Brandee J.K. Faria*
BRANDEE J.K. FARIA

Attorney for Plaintiff BRANDON FARIAS, individually and on behalf of all others similarly situated.

**JURY DEMAND**

Plaintiff BRANDON FARIAS, individually and on behalf of all other similarly situated, demands a trial by jury on all issues so triable.

DATED: Honolulu, Hawai‘i, October 1, 2026.

*/s/ Brandee J.K. Faria*
BRANDEE J.K. FARIA

Attorney for Plaintiff BRANDON FARIAS, individually and on behalf of all others similarly situated.